IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN D. SMITH, | ) | CASE NO. 5:04-CV2353 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE GWIN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| DAVID BOBBY, Warden | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before

the court is John D. Smith's ("Smith") petition for a writ of habeas corpus filed pursuant to

28 U.S.C. § 2254 on May 23, 2005.  Smith is in the custody of the Ohio Department of

Rehabilitation and Correction pursuant to a journal entry of sentence in the case of *State*

*of Ohio v. Smith*, Case No. 00-CR-0198 (Wayne County 2002).  For the reasons set forth

below, the magistrate judge recommends the petition be denied.

I.

The Ninth Appellate District Court of Ohio found the following relevant facts on

Jones' direct appeal of his conviction.

> On August 30, 2000, the Wayne County Grand Jury indicted Mr. Smith on
> one count of aggravated murder, in violation of R.C. 2903.10.  The deceased was
> Mr. Smith's ex-wife, Janice Elaine Hartman Smith ("Janice"), who disappeared in
> November of 1974.

*      *      *      *      *

> At trial, during the state's case-in-chief, there was evidence presented that

Janice, born March 2, 1951, married Mr. Smith shortly after their high school graduation when they were nineteen years old. The newly married couple moved to Columbus, Ohio, where they lived for approximately one and a half to two years. Gary Hartman ("Gary"), Janice's brother, testified that, when he went to visit Janice in Columbus, there was a domineering type of situation when Mr. Smith was present.

Both Janice's mother, Betty Lippincott, and Gary recounted incidents during which Mr. Smith's temper flared. Betty Lippincott testified that Mr. Smith berated her and Janice for not being able to prepare anything but soup and sandwiches, while Gary related that Mr. Smith threw a chessboard against the wall after losing a game to him.

According to Betty Lippincott, Janice called her from Columbus to inform her that she was divorcing Mr. Smith. Betty Lippincott described Janice as angry and upset during the telephone conversation. Sometime thereafter, in 1974, Janice returned to Wayne County, Ohio. For approximately one week, she lived with her father in Doylestown. In the Fall of 1974, Mr. Smith moved back to Wayne County, and, at the time of Janice's disappearance, it appears that Janice and Mr. Smith were living together in a trailer home in Wayne County. While living in Wayne County, Janice worked as a go-go dancer at a local establishment. She also served as a police informant on drug-related matters.

On November 10, 1974, Janice was physically attacked, sexually assaulted, and threatened. In a police report filed shortly after the incident, Janice described what had occurred. Janice stated that, while at the Portage Pub in Doylestown, she and her date, Leonard Bennett, were invited by a blond-haired man to a party at Larry Swaine's house. While at Larry Swaine's residence, a man threw her to the floor, removed her clothing, dragged her into the bedroom, and attempted to have sexual intercourse with her. According to Janice, the man told her that "bitches like you don't deserve to live." At that point, several other men entered the bedroom and held Janice down. She stated that she struggled and was struck in the face. Others attempted to engage in sexual relations with her. At some point, the blond-haired man came into the room with a loaded shotgun, pointed it at Janice, and said, "narcs always have an easy way out." Another man shouted not to kill Janice, and Leonard Bennett and Janice were eventually released.

On November 14, 1974, the dissolution of Janice and Mr. Smith's marriage was finalized. Janice disappeared three days later on November 17, 1974. According to Deputy Sheriff Thomas L. Gasser of the Wayne County Sheriff's Department, on November 19, 1974, Mr. Smith filed a missing person report. In that report, Mr. Smith listed his wife, rather than ex-wife, Janice, as missing. According to the report, Mr. Smith had last seen Janice on November 17, 1974 with a stocky man who had a mustache at the Sun Valley Inn, a local tavern. Kathy Peridon, who was present when Mr. Smith made the report, confirmed that Janice

2

had been at the Sun Valley Inn and that Janice dropped her off at her home. Kathy Peridon told the officer that Janice then left with the other occupant of her vehicle, a man.

In the report, Mr. Smith told Officer Gasser that Janice was wearing her wedding and engagement rings and a diamond watch. Additionally, Mr. Smith advised that, because Janice's beloved Mustang was parked at their trailer, Janice must have returned home in the early morning hours of November 18, 1974 and left before he woke, possibly to file charges against certain individuals.

Betty Lippincott testified that, although Mr. Smith had frequently contacted her before Janice's disappearance, he never called her to ascertain whether Janice had been located.

At trial, Michael Smith ("Michael"), the defendant's younger brother, testified that Janice had told him that she and Mr. Smith were getting along better after they decided to terminate their marriage and that Mr. Smith really loved Janice. Michael said that he learned about Janice's disappearance from Mr. Smith. At that time, Mr. Smith told him that Janice was going into a witness relocation program because she was a drug informant. Subsequently, Michael helped Mr. Smith pack some of Janice's belongings at the trailer and transport them to their grandparents' garage in Seville, Ohio. The grandparents, the Chaneys, owned a Marathon filing station, and, although they sold gas, they no longer used the garage for business purposes.

Michael testified that, during the Ohio State-Michigan football game, which was played around the Thanksgiving holiday, he went to the garage to find out why Mr. Smith was not watching the football game as he had in the past. Michael found his brother building a wooden box out of plywood. In response to a question, Mr. Smith stated that he was building a box in which to store some of Janice's belongings. Michael testified that the box was long and skinny, approximately eight inches high, sixteen inches wide, and four feet long. According to Michael, when he informed Mr. Smith that the dimensions of the box were strange for storing things, Mr. Smith became angry and said nasty things, so Michael left.

Michael related that he finished watching the Ohio State game and the following football game before returning to the garage. When Michael went to the garage the second time, Mr. Smith had completed the box and was rolling up (not folding) Janice's clothes and tucking them around the edges of the box. Michael described his brother as visibly upset, almost to the point of crying. Afterwards, he saw the box sitting on the north part of the east wall of the garage with some of Janice's other belongings. Michael stated that the box stayed there a few years but was eventually relocated to the south part of the garage, where it remained until June of 1979.

In June of 1979, when he went home on his lunch break, his grandfather who

3

was panicked came up to him, explaining that he had partially opened the box. When Michael looked at the box, he could not tell what was inside but told his grandfather that he would get rid of it.  He took the box behind his house and completely pried open the box and discovered a human skeleton that had the legs sawed off just below the knee.  Michael believed that the remains belonged to Janice.  Instead of calling the police, Michael called his brother in Hammond, Indiana and informed him that he had opened and looked inside the box.  According to Michael, Mr. Smith said that he would be right there, arrived that night, and picked up the box.

Joseph Dabrowski, Mr. Smith's coworker at Copco Industries, testified that, in June of 1979, Mr. Smith left work early one Friday purportedly to do some business in Seville, Ohio, and returned on Tuesday of the following week.

While his brother was picking up the box in Seville, Michael asked him for an explanation.  According to Michael, Mr. Smith told him that two men drugged him and took him to a warehouse.  When he woke, Janice was dead on the floor, and an FBI agent and a Wayne County Sheriff threatened to frame him for murder.  At that point, Mr. Smith was rendered unconscious again and returned to his trailer. In his trailer, he found Janice dead on the floor.  Michael testified that his brother then told him that he threw Janice in his van and quickly left but noticed a Wayne County Sheriff pulling up to his trailer.

After hearing this story, Michael offered to let Mr. Smith hide the box in the new cement being poured in certain apartments.  Mr. Smith declined, put the box in his black Corvette, which was spacious enough to fit the box, and drove away.  According to Michael, his brother told him that he was taking the box to Hammond, Indiana. Michael said he had not seen the box since.

Michael did not tell anyone about the box until May of 1999 after receiving a non-prosecution agreement and after his grandparents were deceased.   In February of 2000, the Wayne County Sheriff's Department sent a letter to Gerry Burman, a Deputy Sheriff with the Newton County Indiana Sheriff's Department, requesting assistance in locating a Jane Doe.  From the description, Officer Burman remembered a Jane Doe who was discovered in a plywood box in a very remote area in 1980 by the county's highway department.  The box was found on County Road 400 one and a half miles from a major roadway and was approximately forty miles south of Hammond, Indiana.  A law enforcement officer on the scene in 1980 stated that various items of clothing and a quilt were packed into and around the box.  Photographs, which were admitted into evidence, corroborate this testimony.  The condition of the grass where the box rested suggested that it had been in that location for a significant period of time.

Officer Burman assisted in exhuming the remains in March of 2000.  The remains in the box were eventually identified as being Janice's.  No cause of death,

however, could be determined. Dr. Steven A. Symes, a forensic anthropologist, explained that, if the trauma, for instance a bullet, does not directly impact the bones it does not show up on the skeletal remains. Dr. Symes also testified that Janice's lower legs were sawed off postmortem, mostly likely with a serrated knife.

In March of 2000, a cadaver dog, Eagle, searched the Chaney garage. According to Eagle's handler, Sandra Anderson, Eagle alerted that the odor of human remains was present where the box had first been located according to Michael but did not alert to the alleged second location of the box.

In 1999, Michael agreed to have his telephone conversations with Mr. Smith recorded while cooperating with law enforcement. During these conversations, audiotapes of which were played for the jury, Mr. Smith can be heard explaining that someone, as a practical joke, put a goat in the box and that the box was not anywhere near Seville, Ohio. In a telephone conversation on July 22, 1999, Michael lied to Mr. Smith, telling him that he was supposed to testify before a grand jury on August 5, 1999. After that telephone call, Mr. Smith disappeared for a few days. According to Trevor Alfred Haywood, Mr. Smith's coworker in Escondido, California, Mr. Smith did not initially report for work on August 5, 1999. Mr. Haywood testified that this was unusual because of Mr. Smith's good work habits.

At trial, Michael admitted that he had told various individuals different stories about where Janice's body was buried over the years. On cross-examination, the defense exposed the fact that, once Michael had decided to cooperate, he was inconsistent as to certain details of his story.

Special Agent Robert Hilland of the FBI testified that, in early 1998, he received a written request from the West Windsor Police Department, requesting assistance in investigating Janice's disappearance. Representatives of several law enforcement agencies in several states participated in the investigation. According to Special Agent Hilland, after generating new intelligence, law enforcement officials began conducting interviews nationwide on May 5, 1999. On that day, Mr. Smith, along with several other individuals, was interviewed. During the interview, Mr. Smith denied knowing what happened to Janice. When told that, during an interview in 1992, Kathy Paridon, contrary to her initial story, had said that there was no other occupant in the vehicle when Janice gave her a ride home on November 17, 1974, Mr. Smith responded that Ms. Paridon was lying.

According to Agent Hilland, when he started talking about Michael, Mr. Smith began to cry. Agent Hilland again asked about Mr. Smith's involvement in Janice's disappearance and opined that Mr. Smith was responsible. According to Agent Hilland, at that point, Mr. Smith, who was very emotional, began saying that he did not want to lie anymore, that he did not know how to begin talking about it, and that he was scared. Mr. Smith also kept saying that his life was a nightmare, which he was tired of living. Afterwards, Mr. Smith complained of feeling unwell, and the interview was eventually concluded.

As previously mentioned, Mr. Smith reported that Janice had been wearing her diamond watch the last time he saw her. Kathleen McDonald, a close friend of Mr. Smith's, testified that, in 1978, she shared with Mr. Smith her desire to buy a green watch, which she had seen advertised. According to Kathleen McDonald, Mr. Smith told her not to buy the watch and gave her a watch with a jewel beveled "J" and diamonds. Mr. Smith told her that it had belonged to his wife, who had died. The watch was admitted into evidence.

Scott Mintier, Mr. Smith's coworker at the Pullman Standard Company in Hammond, Indiana, identified the same exhibit, as the watch he had seen Mr. Smith wearing in 1977. On cross-examination, Scott Mintier admitted that he had given a slightly different description of the watch in July of 1999 but affirmed that the watch in the exhibit was the same watch he had seen Mr. Smith wearing in 1977.

Lodema Hartman ("Lodema"), Janice's younger sister, was twelve years old in 1972. She testified that she had helped Mr. Smith buy a green watch for Janice. She stated that the watch previously identified by Kathleen McDonald and Mr. Mintier looked like the watch that Mr. Smith had purchased Janice. Lodema also testified that she saw her sister at their mother's house in the fall of 1974. During that visit, for reasons unknown to Lodema, she and Janice swapped clothing. According to Lodema, just before leaving, Janice hugged her and whispered that she would see her at her graduation. Lodema's graduation, however, was four years away.

Additionally, evidence adduced at trial demonstrated that Mr. Smith had explained Janice's disappearance differently to various individuals over the years. Detective Michael Dansbury of the West Windsor Township New Jersey Police Department testified that he met with Mr. Smith on October 16, 1991. According to Detective Dansbury, during their conversation, Mr. Smith told him the last saw Janice heading toward Florida to join a commune and that he had not seen or heard from her since. Mr. Smith denied filing a missing person report for Janice until Detective Dansbury told him that he had a copy of the report.

Dennis Evans, a long time friend of Mr. Smith's, testified that Mr. Smith had told him that Janice had left because she was testifying in a drug case.

Sandi Norwood Haynesworth, another close friend of Mr. Smith's, testified that, in 1975, Mr. Smith told her that he married Janice right out of high school and loved her very much, but that she began using drugs and hanging around rough people, so they mutually agreed to end their marriage. According to Sandi Haynesworth, Mr. Smith related that drug dealers had murdered Janice because she owed them money. Mr. Smith said that he received a telephone call from the murderers telling him to go to a particular location and that, when he went there, he saw Janice's dead body and retrieved her wedding rings. When asked, Mr. Smith stated that he did not call the police because he was afraid they would kill him.

6

Janice Miller, Mr. Smith's girlfriend in Connecticut in 1992, testified that she was a prostitute and a drug user to whom Mr. Smith gave money to buy drugs. After approximately one month of dating Mr. Smith, Janice Miller moved in with him. She related that she canceled a trip to Atlanta with Mr. Smith when he told her that Janice was a drug addict who was killed by a drug dealer because she was a drug informant. He related that a FBI agent gave him this information. According to Janice Miller, Mr. Smith maintained that he never saw Janice's body. Janice Miller testified that her relationship with Mr. Smith ended because he would not give her any more money and she thought he was stealing her clothing.

Sheila Sautter testified that she met Mr. Smith at work in the early 1980's in Connecticut, and they dated for approximately seven and one half years. While they lived together, Sheila Sautter discovered Mr. Smith's old resume, which indicated that Mr. Smith was divorced with no children. Up until that point, Sheila Sautter believed that Mr. Smith was single. When she confronted Mr. Smith, he denied having been married and blamed the inaccuracies on his resume as being a secretary's typographical error. However, when pressed, Mr. Smith stated that he was married for a very short time just after high school and that eventually he and Janice went on their separate ways.

In April of 1992, law enforcement officers asked Sheila Sautter to record a telephone conversation with Mr. Smith. An audiotape of the conversation was played for the jury and admitted into evidence. During the conversation, Mr. Smith denied any knowledge that Janice had been missing for all of the years. Later, Mr. Smith admitted that he had been lying to everyone, but it is unclear exactly what Mr. Smith admitted he was lying about.

Summer McGowin testified that her mother, Diane Susan Bertalan, married Mr. Smith in September of 1998. Summer McGowin related that, on July 24, 1999, she and her mother asked Mr. Smith about the box. According to Summer McGowin, Mr. Smith responded that someone dropped the box off on the front porch of his grandfather's residence and that his brother informed him that a dead female was inside. Mr. Smith stated that he did not look inside of the box and disposed of it by dumping it on the side of a farm road. Summer McGowin testified that, approximately two weeks later, she asked Mr. Smith if he killed Janice and that Mr. Smith did not answer her question. Summer McGowin also related that, after Mr. Smith was served with annulment papers, she went to be with her mother because her mother was scared.

Diane Bertalan generally confirmed her daughter's version of events. Diane Bertalan, however, testified that Mr. Smith had indicated that a dead goat was inside of the box, not a dead girl as her daughter had testified. Diane Bertalan added that she filed a missing person report listing Mr. Smith as missing when he disappeared on the evening of July 22, 1999. Mr. Smith, however, returned on July 24, 1999.

7

The defense presented the testimony of Leonard Bennett, Janice's date when she was attacked on November 10, 1974.  He corroborated Janice's version of the events of that night and testified that Janice was afraid of certain people in the Doylestown area.

*State of Ohio v. Smith*, 2002 LEXIS 4548 at *1-*2, *5-*21 (Ohio App. August 28, 2002).

On August 30, 2000, the Wayne County grand jury indicted Smith on one count of aggravated murder.  Smith pleaded not guilty to this charge.

On April 2, 2001, the state expressed its intention to introduce evidence ("the New Jersey evidence") concerning the disappearance of Smith's second wife, Betty Fran Smith. On May 21, 2001, after a hearing on the matter, the trial court issued an order prohibiting the introduction of the New Jersey evidence.

On July 19, 2001 a jury acquitted Smith of aggravated murder but found him guilty of the lesser offense of murder.  Smith was sentenced to an indefinite term of 15 years to life in prison.

On July 20, 2001 Smith moved for a new trial.  In his motion Smith argued that a new trial was warranted because State's Exhibit 48 contained a reference to the New Jersey evidence deemed inadmissible by the court.  According to Smith, this portion of the exhibit was inadvertently admitted without objection by the defense.  On September 18, 2001 the trial court denied Smith's motion for a new trial.

On August 17, 2001 Smith, represented by new counsel, filed in the state appellate court a notice of appeal from the trial court's judgment and sentence.  On October 12, 2001 Smith filed in the appellate court a notice of appeal of the trial court's denial of his motion for a new trial.  On November 5, 2001 the state appellate court consolidated these appeals. Smith raised nine assignments of error in his appeal:

8

**ASSIGNMENT OF ERROR NO. I**: Due to the jury's consideration of inadmissible evidence during deliberations, the trial court's denial of Appellant Smith's New Trial Motion violated his rights to due process, fair trial, and the presumption of innocence. Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; Article I, Section 10 of the Ohio Constitution; Crim. R. 33. (Tr. 919,921; Tr.7/19/01: Exh.48)

**ASSIGNMENT OF ERROR NO. II**: The trial court prejudicially erred by admitting irrelevant character and prior acts evidence in the state's case in chief in violation of Evid.R.402-405 and R.C. 2945.59, and appellant's rights to due process and to fair trial. Fifth, Sixth, and Fourteenth Amendments. United States Constitution; Article I, Section 10, Ohio Constitution. (Tr.255-265, 307, 315, 316, 700, 843, 864,865, 867, 881, 900)

**ASSIGNMENT OF ERROR NO. III**: Appellant Smith was deprived of the effective assistance of counsel. Sixth and Fourteenth Amendments, United States Constitution; Article I, Section 10, Ohio Constitution. (Tr.246, 307, 662, 843, 1038;Tr.7/19/01; Exh. 48)

**ASSIGNMENT OF ERROR NO. IV**: The trial court erred when it admitted inadmissible lay opinion testimony on the issue of Appellant Smith's guilt, violating Evid. R. 701 and the Fourteenth Amendment to the United States Constitution. (Exh. 48)

**ASSIGNMENT OF ERROR NO. V**: The court erred when it admitted expert testimony about a canine "search" of the Chaney garage which was not reliable under Evid.R.702. and without a cautionary jury instruction in violation of the Fifth and 14th Amendments to the U.S. Constitution; Section 16, Article I of the Ohio Constitution. (Tr. 644-690)

**ASSIGNMENT OF ERROR NO. VI**: Appellant Smith's conviction was not supported by sufficient evidence in violation of the Fourteenth Amendment, United States Constitution; Article I, Section 16 of the Ohio Constitution. (Tr.350, 725, 732, 733, 946-966; Exh. A & B)

**ASSIGNMENT OF ERROR NO. VII**: This conviction violates the constitutional rights to present a defense, to a fair trial, and to confront. Fifth, Sixth, & Fourteenth Amendments. United States Constitution; Article I, Sections 10 and 16, Ohio Constitution. (Tr.948-966)

**ASSIGNMENT OF ERROR NO. VIII**: Appellant Smith was deprived of a fair trial based on the egregious, pervasive, prosecutorial misconduct that occurred, in contravening his rights to due process and fair trial. Fifth, Sixth, &

9

**Fourteenth Amendments.  U.S. Constitution; Article I, Sections 10 and 16, Ohio Constitution.  (Tr.948-966)**

**ASSIGNMENT OF ERROR NO. IX:  The trial court erred in denying Appellant Smith's motions for acquittal because the state failed to prove the corpus delicti, violating the Ohio Constitution's Article I, Section 16, and the 14th Amendment Due Process Clause. (Tr.619, 807; Ex. 53A)**

(Spacing and punctuation in the original.)  The state appellate court overruled Smith's nine assignments of error and affirmed the judgment of the trial court on August 29, 2002.

Smith filed a timely appeal in the Supreme Court of Ohio on October 9, 2002, represented by the same appellate counsel.  Smith presented the following propositions of law in his memorandum in support of jurisdiction:

PROPOSITION OF LAW NO. I:  When the jury considers inadmissible evidence during deliberations, the trial court's failure to grant the defendant's new trial motion violates his rights to due process, a fair trial, and the presumption of innocence. Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution; Article I, §10 of the Ohio Constitution; Crim. R. 33.

PROPOSITION OF LAW NO. II:  A trial court commits prejudicial error by allowing the admission of irrelevant character and prior acts evidence in violation of Evidence Rule 402 through 405, R.C. 2945.59, and the Fifth, Sixth, and Fourteenth Amendments to United States Constitution and Article I, § 10 of the Ohio Constitution.

PROPOSITION OF LAW NO. III:  When counsel's performance is deficient and that deficient performance prejudices the defendant's case, the defendant's constitutional rights to the effective assistance of counsel have been violated.

PROPOSITION OF LAW NO. IV:  A trial court commits prejudicial error when it admits inadmissible lay opinion testimony on the issue of the defendant's guilt thereby violating Evid. R. 701, the Fourteenth Amendment to the United States Constitution, and  Article I, § 16 of the Ohio Constitution.

PROPOSITION OF LAW NO. V:  A trial court errs when it admits unreliable expert testimony about a canine "search" without a cautionary jury instruction in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 16 of the Ohio Constitution.

10

PROPOSITION OF LAW NO. VI:  When the state fails to prove each and every element of the offense, the defendant's conviction is not supported by legally sufficient evidence.

PROPOSITION OF LAW NO. VII:  A defendant's right to present a defense, to a fair trial, and to confrontation are violated when the trial court prohibits the defendant from eliciting exculpatory and relevant evidence in support of his defense. Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; Article I §§ 10 and 16, Ohio Constitution.

PROPOSITION OF LAW NO. VIII:  Egregious and pervasive prosecutorial misconduct violates a defendant's rights to due process and a fair trial. Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; Article I, § 16 to the Ohio Constitution.

PROPOSITION OF LAW NO. IX:  When the state fails to prove the corpus delicti, the trial court should grant a motion for acquittal. Fourteenth Amendment to the United States Constitution and Article I, § 16 of the Ohio Constitution.

The Ohio Supreme Court denied Smith leave to appeal and dismissed his appeal as not involving any substantial constitutional question on January 3, 2003.

On May 20, 2002 Smith filed in the trial court a petition to vacate judgment.  Smith asserted two grounds for relief:

**First Ground For Relief :  Defense counsel provided ineffective assistance of counsel in failing to consult with and seek the testimony of an expert witness to rebut the testimony of the State's expert witness Sandra Anderson and her dog Eagle.  Thus, Smith's convictions and sentences are void because he did not receive effective assistance of counsel at trial, and he was denied his rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Sections 2, 10 and 16, Article I, Ohio Constitution.**

**Second Ground For Relief :  Defense counsel provided ineffective assistance of counsel in failing to seek change of venue.  Counsel failed to seek change of venue, when  the case had received inordinate pre-trial publicity, thereby, denying Smith a fair trial by a panel of impartial jurors. Thus, Smith's convictions and sentences are void because he did not receive effective assistance of counsel at trial, and he was denied his rights to a fair trial, equal protection, and due process of law under the Sixth and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I, Ohio Constitution.**

11

(Punctuation in the original.)  On November 5, 2002 the trial court dismissed Smith's petition to vacate.

On December 4, 2002 Smith filed in the state appellate court a notice of appeal of the trial court's dismissal of his petition to vacate.  Smith raised one assignment of error in his appeal:

> **The trial court erred in dismissing Smith's petition without an evidentiary hearing because Smith provided sufficient evidence that he was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution.**

On August 14, 2003 the state appellate court found Smith's claim to be barred by *res judicata* and dismissed Smith's assignment of error without reaching the merits of his claim.

On September 22, 2003 Smith filed in the Ohio Supreme Court a notice of appeal of the appellate court's decision of August 13, 2003.  In his memorandum in support of jurisdiction, Smith asserted two propositions of law:

> PROPOSITION OF LAW NO. I:  Defense counsel provided ineffective assistance of counsel in failing to consult with and seek the testimony of an expert witness to rebut the testimony of the State's expert witness Sandra Anderson and her dog Eagle.  Thus, Smith's convictions and sentences are void because he did not receive effective assistance of counsel at trial, and he was denied his rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I, Ohio Constitution.

> PROPOSITION OF LAW NO. II:  Defense counsel provided ineffective assistance of counsel in failing to seek change of venue.  Counsel failed to seek change of venue, where case had received inordinate pre-trial publicity, thereby, denying Smith a fair trial by a panel of impartial jurors.  Thus, Smith's convictions and sentences are void because he did not receive effective assistance of counsel at trial, and he was denied his rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I, Ohio Constitution.

(Punctuation in the original.)  On December 24, 2004 the Ohio Supreme Court denied

leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

Smith filed an application for reopening his appeal in the state appellate court pursuant to Ohio App. R. 26(B) on May 26, 2004, claiming ineffective assistance of appellate counsel.  Smith asserted four assignments of error in support of his application:

### Assignment of Error No. I

The Appellant's conviction and sentence are in violation of State of Ohio and Federal Constitutions because Appellant was denied the Effective Assistance of Counsel when counsel failed to request scientific and forensic tests to be performed to determine the cause and time of death.  See, U.S. Constitution, Amendments VI and XIV; Ohio Constitution, Article I, §§ 1, 2, 10 and 16.

### Assignment of Error No. II

The appellant's conviction and sentence are in violation of State of Ohio and Federal Constitutions because Appellant was denied the Effective Assistance of Counsel when counsel failed to request that all of the potential suspects be interviewed and the possible crime scene (her place of residence) investigated. See U.S. Constitution, Amendments VI and XIV; Ohio Constitution, Article I, §§ 1, 2, 10 and 16.

### Assignment of Error No. III

The Appellant's conviction and sentence are in violation of State of Ohio and Federal Constitutions because Appellant was denied the Effective Assistance of Counsel when the "box" the body was found in and it's [sic] contents or lack of contents were not analyzed [sic] and investigated.  See, U.S. Constitution, Amendments VI and XIV; Ohio Constitution, Article I, §§ 1, 2, 10 and 16.

### Assignment of Error No. IV

The Appellant's conviction and sentence are in violation of State of Ohio and Federal Constitutions because appellant was denied the Effective Assistance of Counsel when trial counsel stated "I screwed up", "The bottom line is Mr. Smith shouldn't suffer from my mistake" (Tr. 978). See, U.S. Constitution, Amendments VI and XIV; Ohio Constitution, Article I, §§ 1, 2, 10 and 16.

The appellate court denied Smith's application to reopen on August 3, 2004, holding that

13

his claim of ineffective assistance of appellate counsel was barred, as he missed the 90 day filing requirement and was unable to demonstrate good cause for the delay.

Smith filed a motion for reconsideration on August 12, 2004, adding two additional assignments of error:

### Assignment of Error No. V

The appellant's conviction and sentence are in violation of State of Ohio and Federal Constitutions because appellant was denied the Effective Assistance of Counsel when counsel failed to object to jury instructions that were fundamentally defective in not defining or being given on every essential element of the crime. See, U.S. Constitution, Amendments VI and XIV; Ohio Constitution, Article I, Sections 1, 2, 10, and 16.

### Assignment of Error No. VI

The Appellant's conviction and sentence are in violation of State of Ohio and Federal Constitutions because Appellant was denied the Effective Assistance of Counsel when counsel failed to object to defendant appearing before prospective jurors/jurors in prison clothes and/or physical restraints. See, U.S. Constitution, Amendments VI and XIV; Ohio Constitution, Article I, Sections 1, 2, 10 and 16.

The appellate court denied the motion for reconsideration on September 8, 2004, holding that Smith failed to raise any issue for review that either had not already been considered or had not been fully considered by the court.

Smith filed in the Supreme Court of Ohio a timely notice of appeal of the state appellate court's denial of his application to reopen  In his memorandum in support of jurisdiction, Smith offered six propositions of law:

PROPOSITION OF LAW NO. I:  Appellant was deprived of the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 5, 10, and 16 of the Ohio Constitution on his first appeal of right when that counsel failed to argue as an assignment of error trial counsel's failure to request scientific and forensic tests be performed to determine the cause and time of death requiring a reversal of Appellant's conviction and sentence.

14

PROPOSITION OF LAW NO. II:  Appellant was deprived of the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 5, 10, and 16 of the Ohio Constitution on his first appeal of right when that counsel failed to argue as an assignment of error trial counsel's failure to request that all potential suspects be questioned and witnesses interviewed and the possible crime scene (her place of residence or other possibilities) be investigated requires reversal of Appellant's conviction and sentence.

PROPOSITION OF LAW NO. III:  Appellant was deprived of the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 5, 10, and 16 of the Ohio Constitution on his first appeal of right when that counsel failed to argue as an assignment of error trial counsel's failure to request that the box the body was found in and its contents or lack of contents be analyzed and investigated for scientific and forensic evidence requires reversal of Appellant's conviction and sentence.

PROPOSITION OF LAW NO. IV:   Appellant was deprived of the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 5, 10, and 16 of the Ohio Constitution on his first appeal of right when that counsel failed to argue as an assignment of error trial counsel's failure to object to jury instructions that were fundamentally defective in not defining or being given on every essential element of the crime and requires reversal of Appellant's conviction and sentence.

PROPOSITION OF LAW NO. V:  Appellant was deprive [sic] of the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 5, 10, and 16 of the Ohio Constitution on his first appeal of right when that counsel failed to object to defendant appearing before jurors in prison clothes and/or physical restraints and requires reversal of Appellant's conviction and sentence.

PROPOSITION OF LAW NO. VI:   Appellant was deprived of the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 5, 10, and 16 of the Ohio Constitution on his first appeal of right when that counsel failed to argue as an assignment of error trial counsel's proclamation "I screwed up", "The bottom line is Mr. Smith shouldn't suffer from my mistake" (Tr. 978) and requires a reversal of Appellant's conviction and sentence.

On December 1, 2004 the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.

Smith filed a petition for a federal writ of habeas corpus on November 29, 2004.

15

Smith raises three grounds for relief in his appeal:

## FIRST GROUND FOR RELIEF

Petitioner was denied the right to the effective assistance of counsel at trial when counsel's errors, omissions and incompetence provided deficient representation at trial denying Petitioner's rights to due process and a fair trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

## FIRST GROUND FOR RELIEF
## SUBGROUND "A" (biased jurors)

Trial counsel were ineffective for failing to challenge biased jurors whose statements made it clear that they could not serve as fair and impartial jurors denying Petitioner his rights to due process and a fair trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

## FIRST GROUND FOR RELIEF
## SUBGROUND "B" (change of venue)

Trial counsel were ineffective for failing to move for a change of venue when many jurors voiced knowledge of the inordinate amount of extensive biased and prejudicial pretrial media coverage about the case denying Mr. Smith his rights to a fair trial and due process by a panel of impartial jurors in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

## FIRST GROUND FOR RELIEF
## SUBGROUND "C" (expert witness)

Trial counsel were ineffective for failing to object to lack of foundation for dog testimony and failing to consult with and seek the testimony of an expert witness to rebut the testimony of the State's expert witness and not requesting a cautionary jury instruction denying Petitioner his rights to a fair trial and due process in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

## FIRST GROUND FOR RELIEF
## SUBGROUND "D" (prosecutorial misconduct)

Trial counsel were ineffective for failure to object to the egregious, pervasive, prosecutorial misconduct which occurred in the trial proceedings denying Petitioner his right to a fair trial and due process in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

### FIRST GROUND FOR RELIEF
### SUBGROUND "E" (inadmissable evidence)

Trial counsel were ineffective for failure to object to prejudicial, inadmissible, irrelevant character and bad acts evidence in the state's case denying Petitioner his rights to a fair trial and due process in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

### FIRST GROUND FOR RELIEF
### SUBGROUND "F" (confrontation)

Trial counsel were ineffective for failure to elicit exculpatory testimony from a key witness depriving Petitioner of his rights to present a defense, to a fundamentally fair trial and to confrontation when the trial court prohibited the defendant from eliciting exculpatory and relevant evidence in support of his defense in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

### SECOND GROUND FOR RELIEF

Petitioner was denied his rights to due process, to be presumed innocent and to a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when the trial court committed reversible error by failing to grant Petitioner's Motion for a New Trial when the jury considered inadmissible evidence during deliberations.

### THIRD GROUND FOR RELIEF

Petitioner was denied the right to due process under the Fourteenth Amendmet [sic] to the United States Constitution when the trial court committed reversible error by its failure to grant Petitioner's motion for acquittal when the state failed to prove each and every element of the offense and Petitioner's conviction was not supported by legally sufficient evidence.

Respondent filed an answer to the petition on May 23, 2005 (Docket #11). Smith filed a traverse on June 14, 2005 (Docket #24).[1]

---

[1] The court granted Smith an extension until August 1, 2005 to file a traverse. When he filed his traverse on June 14, 2005 Smith reserved the right to file an amended traverse up to the August 1, 2005. Smith did not file such an amended traverse.

II.

A.    *Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective

jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody
> under the judgment and sentence of a State court of a State which contains two or
> more Federal judicial districts, the application may be filed in the district court for the
> district within which the State court was held which convicted and sentenced him
> and each of such district courts shall have concurrent jurisdiction to entertain the
> application.

28 U.S.C. § 2241(a) and (d).  Smith was sentenced by the Court of Common Pleas of

Wayne County, Ohio, and Smith filed his writ of habeas corpus in the Northern District of

Ohio.  Respondent contends that Smith's second and third claims for relief are not

cognizable in habeas corpus.  Respondent does not otherwise challenge this court's

jurisdiction over Smith's petition.

Respondent states that Smith's second and third claims for relief, asserting

violations of due process related to Smith's motion for a new trial and motion for acquittal,

are not cognizable in a petition for a federal writ of habeas corpus.  Respondent argues

that the two claims challenge the discretion of the trial court and that a claim of abuse of

discretion by a state court judge is not sufficient to state a constitutional violation.

Respondent is partially correct; abuse of discretion of a state trial court does not show,

without more, a "violation of the Constitution or the laws or treaties of the United States,"

as required by 28 U.S.C. §2254(a).  *Sinistaj v. Burt*, 66 F.3d 804, 805 (6th Cir. 1995).

However, Smith argues that the procedural errors during the trial were so egregious as to

deny fundamental fairness in the trial process  and consequently violated his right to due

process.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Clemmons v. Sowders*,

18

34 F.3d 352 (6th Cir. 1994).  That is a constitutional issue.  For this reason, the court will look at the merits of Smith's second and third grounds for relief.  This court has jurisdiction over all of Smith's claims.

B.    Evidentiary hearing

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings or when the state proceedings were seriously defective or inadequately recorded.  See 28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Smith's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    Exhaustion of state remedies

A state prisoner must properly exhaust available state remedies prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); Castillo v. Peoples, 489 U.S. 346, 349 (1989); Riggins v. Macklin, 936 F.2d 790, 793 (6th Cir. 1991).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  Manning v. Alexander, 912 F.2d 878, 881-83 (6th Cir. 1990).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  Anderson v. Harless, 489 U.S. 4 (1982); Picard v. Connor, 404 U.S. 270 (1971); Shoultes v. Laidlaw, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." Picard, 404 U.S. at 275; see also Harris v. Reeves,

19

794 F.2d 1168. 1174 (6th Cir. 1986).

Because Smith has no remaining state remedies for his claim, Smith has satisfied the requirement of exhaustion.

D.     *Procedural default*

Procedural default occurs when a petitioner fails to present his or her constitutional claims to the highest state court in a federal constitutional context.  *Anderson*, 489 U.S. 4; *Picard*, 404 U.S. 270.  Additionally, the Sixth Circuit has held that a constitutional claim presented to the federal courts that does not rest on the same theory as was presented to the state courts is procedurally defaulted.  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *Prather v. Rees*, 822 F.3d 1418, 1421 (6th Cir. 1987).

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The "cause" prong of the "cause-and-prejudice" test may be satisfied by showing that a claim was procedurally defaulted due to ineffective assistance of counsel.  A petitioner must assert a claim of ineffective assistance of counsel in state court as an

20

independent claim, however, before presenting that claim in this court as cause for a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986).

In ground for relief 1F, Smith argues that trial counsel was ineffective in failing to elicit exculpatory evidence from a key witness, depriving him of his rights to present a defense, to a fundamentally fair trial, and to confront witnesses against him. Although Smith presented a claim of ineffective assistance of trial counsel to the state appellate court and to the Ohio Supreme Court, he did not assert this theory in arguing his claim. Because the constitutional claim presented to the federal court does not rest on the same theory as was presented to the state courts, this sub-claim is procedurally defaulted.

To overcome this procedural default and obtain federal habeas review, Smith must show cause for the default and prejudice resulting from it. To establish cause, Smith argues that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to elicit exculpatory evidence from the witness. Smith did not fairly present his claim of ineffective assistance of appellate counsel, however, to the state courts. Smith attempted to present this claim to the state appellate court in his application pursuant to Ohio App. R. 26(B) for reopening his appeal. But Smith procedurally defaulted this claim because he failed to file his application within the requisite time and failed to offer good cause for the delay. Because Smith did not fairly present this claim of ineffective assistance of appellate counsel to the state court, he may not assert this claim as cause for other procedural defaults.

Smith has procedurally defaulted his claim of ineffective assistance of trial counsel for failing to elicit favorable testimony from a witness, and he fails to show cause and prejudice for that default. For this reason the magistrate judge recommends that the court

21

dismiss ground for relief 1F as procedurally defaulted.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claims that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000); *Miller v. Francis*, 269 F.3d 609, 613-14 (6th Cir. 2001).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* ... clearly established Federal law, as determined by the Supreme Court of the United States."

22

*Williams*, 529 U.S. at 405 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.*  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.*  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (2001).  If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence."  *Id.*  The magistrate judge will consider Smith's remaining claims under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

1.    *Alleged ineffective assistance of trial counsel*

Smith asserts in his first ground for relief that he was denied his rights to due process and a fair trial by trial counsel's ineffectiveness in a) failing to challenge biased jurors whose statements made it clear that they could not serve as fair and impartial jurors; b) failing to move for a change of venue when many jurors admitted exposure to pretrial media coverage of the case; c) failing to object to a lack of foundation for testimony relying

23

on canine evidence, failing to consult with and seek the testimony of an expert witness to rebut the state's expert witness, and not requesting a cautionary jury instruction; d) failing to object to prosecutorial misconduct; and e) failing to object to prejudicial and inadmissible character evidence and evidence of bad acts in the state's case.  Respondent denies that Smith was denied his rights to due process and a fair trial.

The standard for determining whether petitioner's counsel was ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, showing that counsel's performance was deficient, is an objective one:  "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.

24

*Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding.  Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive

or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372

(1993).  A reviewing court must ask itself "whether there is a reasonable probability that,

absent the errors, the factfinder would have had a reasonable doubt respecting guilt."

*Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

In addressing Smith's claims of ineffective assistance of counsel on direct appeal,

the state appellate court made the following findings:

> Mr. Smith argues that he was denied the effective assistance of counsel when trial counsel: . . . 2) failed to object to certain allegedly impermissible other acts and character evidence [1E]; 3) failed to object to various instances of prosecutorial misconduct [1D]; 4) failed to object to lack of proper foundation for the testimony of Eagle's handler, Sandra Anderson; and 5) failed to request a cautionary instruction regarding Sandra Anderson's testimony [1C]. These errors were raised in the above assignments of error.  Assuming, without deciding, that trial counsel's performance was deficient, we cannot find that there is a reasonable probability that, were it not for these alleged errors, the result of the trial would have been different.

> *       *       *       *       *

> Mr. Smith also avers that his trial counsel was ineffective because counsel failed to move for a change of venue due to extensive media coverage [1A] and because counsel failed to challenge for cause jurors who were allegedly biased due to their knowledge of the case [1B].  We find that these arguments lack merit.

> *       *       *       *       *

> We cannot conclude that trial counsel's performance was deficient in not challenging for cause certain jurors and for not moving for a change of venue.  Even if trial counsel's performance was deficient in this regard, these alleged errors, when considered alone or together with the alleged instances of ineffective assistance of counsel, cannot be said to have prejudiced Mr. Smith."

*Smith,* 2002 Ohio App. LEXIS 4548 at *50-*51,*53.  In sum, the state appellate court found

that even if trial counsel's performance had been deficient as alleged by Smith, Smith was

not significantly prejudiced by counsel's failures.

Smith argues that the state appellate court did not consider his claim of ineffective

26

assistance of trial counsel on the merits.  He contends, therefore, that the deferential standard of review of determinations made by state courts is inapplicable to this court's consideration of his claims.  This is incorrect.  The state appellate court did not rule as to whether trial counsel's conduct fell beneath an objective, professional standard with regard to claims 1C, 1D, or 1E, but the state appellate court did decide that if trial counsel had committed error, any such error was harmless.  The state appellate court ruled, therefore, that Smith's claim of ineffective assistance of trial counsel was not well-taken.  This is a decision on the merits and is subject to review under the standards set forth in the AEDPA.

The finding that counsel's alleged errors were harmless is a state court finding of fact.  It is entitled to a presumption of correctness, and Smith must provide clear and convincing evidence that this error was not harmless to overcome that presumption.  That is, he must show by clear and convincing evidence that but for counsel's alleged errors, there is a reasonable probability that the fact finder would have had reasonable doubt concerning his guilt.

Smith provides no such evidence.  He argues in support of some of his claims that he was prejudiced by counsel's alleged errors, but his arguments are not convincing.[2]  In

_____

[2] For example, in support of sub-claim 1C Smith argues that counsel was ineffective in its handling of the testimony of dog-handler Sandra Anderson ("Anderson").  At trial, Anderson testified regarding a search that she and her dog Eagle performed in the garage where Michael testified the victim's body was stored.  Smith claims that trial counsel was ineffective for failing to object to the lack of foundation for canine testimony, failing to request a cautionary jury instruction with regard to the canine testimony, and failing to consult with and seek the testimony of an expert to rebut the state's expert witness.  Smith asserts that these errors denied his right to due process and a fair trial because the testimony was unfairly prejudicial.

On direct appeal, in Smith's third assignment of error, he alleged that trial counsel was ineffective in failing to object to the lack of proper foundation for the testimony of Anderson and failing to request a cautionary instruction regarding Anderson's testimony.

support of other claims he focuses on the assertion that counsel's performance was erroneous but does nothing to establish prejudice.[3]  Because Smith fails to demonstrate by clear and convincing evidence that he was prejudiced by trial counsel's alleged errors, Smith cannot win relief for his claims of ineffective assistance of trial counsel.  For this reason the magistrate judge recommends that the court dismiss Smith's first ground for relief and sub-claims 1A through 1E.

2    *Alleged due process violation for failure to grant motion for new trial*

Smith claims that he was denied his right to due process, including the presumption

---

The state appellate court found that, even assuming that trial counsel's performance was deficient, there was not a reasonable probability that without these alleged errors, the result of the trial would have been different.  Smith offers some evidence that Anderson's testimony may have been inaccurate, and that trial counsel should have objected to the inclusion of her testimony.  Anderson has pleaded guilty to planting evidence in a number of other cases.  Smith claims that Anderson overstated the dog's ability and led the jury to believe the dog was infallible.  He also asserts that the state court's determination that the admission of this testimony was harmless was incorrect because this testimony served to corroborate the untruthful testimony of another witness, Michael.  Smith provides no evidence, however,  to establish that without Anderson's testimony there is a reasonable probability that the jury would have had a reasonable doubt respecting his guilt.  As the state appellate court found, the admission of the canine testimony simply corroborated more compelling evidence, such as the discovery of the victim's bones in the box, Michael's testimony regarding Smith's construction of the box, and Smith's trip to Seville, OH to collect the box once Michael discovered the contents.  Even if trial counsel had succeeded in excluding the testimony of Anderson, there is no reasonable probability that the fact finder would have had a reasonable doubt concerning Smith's guilt without that testimony.

[3] For example, in arguing that it was ineffective assistance of counsel in failing to move for a change of venue and failing to challenge several jurors for cause, Smith offers no evidence that any member of the jury judged his case unfairly.  That there was media coverage of the trial and that some jurors' answers to questions on voir dire were less forthright and definitive than Smith would like does little to prove that Smith was prejudiced by counsel's failure to move for a change of venue or to challenge some jurors for cause. It certainly does not meet Smith's burden of showing by clear and convincing evidence that he was prejudiced by these alleged errors.

of innocence and a fair trial, when the trial court denied his motion for a new trial following the introduction of inadmissible evidence. The decision to grant or deny a motion for a new trial is a matter of state law, governed by Ohio Crim. R. 33(A)(1). "It is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U. S. C. § 2241." *Estelle v. McGuire*, 502 U.S. 62 (1991). An error involving state law is cognizable in habeas, however, if it is also a violation of due process. As Smith asserts that the failure to grant a new trial was a violation of due process, this court will consider the claim.

The right to a fair trial is a right implicit in the due process clauses of the Fifth and Fourteenth Amendments. *See United States v. Agurs*, 427 U.S. 97, 107 (1976). The analysis of alleged violations of the right is identical under either amendment. *Id.* "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). "[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." *Strickland v. Washington*, 466 U.S. 668, 684 (1984). "Every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law." *Murchison*, 349 U.S. at 136 (quoting *Tumey v. State of Ohio*, 273 U.S. 510, 532 (1927)).

Not all violations of the right to a fair trial, however, entitle a petitioner to habeas relief. In *Brecht v. Abrahamson,* 507 U.S. 619 (1993), the Supreme Court held that a court

29

considering a collateral review of a conviction should weigh constitutional "trial error"[4] by (1) evaluating the error in the context of the entire record; (2) asking whether the trial error had a substantial and injurious effect on the jury's verdict, and (3) granting relief only if there is grave doubt about whether the error was harmless. *Id.* at 638.  A court may not grant habeas relief unless it believes that the error had a substantial and injurious effect on the outcome of petitioner's case. *Kyles v. Whitley*, 514 U.S. 419, 436 (1995).

Smith claims that the trial court violated his right to due process when it failed to grant his motion for a new trial.  In support of his claim, Smith presents two arguments. First, he asserts that State Exhibit 48 mistakenly contained information which had been deemed inadmissible by the trial court.  Second, he asserts that State Exhibit 48 contained inadmissible lay opinions regarding his guilt.  Smith contends that inclusion of the inadmissible evidence so influenced the jurors that the trial court's failure to grant his motion for a new trial amounted to a violation of due process.

In dismissing Smith's first argument, presented as the first assignment of error on

---

[4] According to the Supreme Court,

[t]rial error "occur[s] during the presentation of the case to the jury," and is amenable to harmless-error analysis because it "may . . . be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial]." *Id.,* at 307-308.  At the other end of the spectrum of constitutional errors lie "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." *Id.,* at 309. The existence of such defects--deprivation of the right to counsel, for example--requires automatic reversal of the conviction because they infect the entire trial process.  See *id.,* at 309-310. Since our landmark decision in *Chapman v. California,* 386 U.S. 18 (1967), we have applied the harmless-beyond-a-reasonable-doubt standard in reviewing claims of constitutional error of the trial type.

*Brecht*, 507 U.S. at 629-30.

30

direct appeal, the state appellate court made the following findings of fact and law:

> In his first assignment of error, Mr. Smith contends that the trial court abused its discretion in denying his motion for a new trial. Specifically, Mr. Smith avers that evidence previously ruled to be inadmissible, namely evidence regarding the disappearance of Mr. Smith's second wife (the "New Jersey Evidence"), which appeared in State's Exhibit 48, constituted an irregularity in the proceedings which prevented him from having a fair trial. See Crim.R. 33(A)(1). We disagree.

> Crim.R. 33(A)(1) provides that a new trial may be granted on motion of the defendant if there was an irregularity in the proceedings which prevented the defendant from having a fair trial. Crim.R. 33(E)(3), however, provides that a new trial shall not be granted because of the admission of evidence against the defendant unless the defendant was prejudiced by the admission. A motion for a new trial pursuant to Crim.R. 33 is addressed to the sound discretion of the trial court. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, paragraph one of the syllabus. Accordingly, a trial court's ruling on such motion will not be disturbed absent an abuse of discretion. Id. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *State v. Clark* (1994), 71 Ohio St.3d 466, 470, 1994 Ohio 43, 644 N.E.2d 331.

> In the present case, prior to trial, the trial court ruled that the New Jersey Evidence was inadmissible under Evid.R. 404(B). The trial court held: "here, we don't know the circumstances under which Fran Smith's death occurred. There are certainly some similar circumstances surrounding the disappearance of the defendant's first two wives. But the court finds lacking the substantial proof required before it can admit this evidence." Accordingly, at trial, the state did not elicit any oral testimony regarding the New Jersey Evidence. State's Exhibit 48, however, contained a reference to the New Jersey Evidence.

> State's Exhibit 48 was the seven page written statement that Michael, the defendant's brother, made to police on May 29, 1999. The vast majority of the document concerned the disappearance of Janice, but, on the bottom of page six and the top of page seven, the law enforcement officer conducting the interview asked Michael the following questions regarding the New Jersey Evidence:

> > "Q: Did you ever know or meet Betty Fran Smith?
> > "A: No.
> > "Q: Did John [Smith] ever discuss Betty Fran's disappearance with you?
> > "A: Yes. He told me that she left a note and never came back. One day I got a phone call from John between Thanksgiving and Christmas of 1991. John told me that he was married, his wife was missing, and that the police from New Jersey would be coming to talk to me. John also told me to tell my grandparents. *** I was shocked because John had just been home

31

for Thanksgiving holiday with Sheila.  When John had called me that was the first time I ever knew he was married again, and the first time I ever heard of Fran."

According to Mr. Smith, defense counsel inadvertently failed to object to the admission into evidence of this portion of State's Exhibit 48.  Consequently, State's Exhibit 48, including those portions dealing with the New Jersey Evidence, was transferred to the jury room when the jury retired to deliberate.  Following the jury's verdict, the trial court recessed and went to thank the jurors for their service and to inform them about sentencing.  The trial court mentioned to the jurors that a relative of Mr. Smith's second wife might make remarks at sentencing and added that there was an order prohibiting any testimony about the second wife's disappearance.  **At that point, one of the jurors informed the trial court that State's Exhibit 48 made reference to the disappearance of Mr. Smith's second wife.  While the trial court was reviewing the exhibit, one of the jurors told the judge that the jurors did not consider it.**  During a brief hearing on July 19, 2001, the trial court related these events to counsel for both parties.

Based on the foregoing, Mr. Smith argues that he was denied a fair trial due to the jury's review of "highly prejudicial, inflammatory, inadmissible information" for which neither a cautionary nor a curative instruction was given.  **The specific references to the New Jersey Evidence in State's Exhibit 48, however, neither were prejudicial nor deprived Mr. Smith of a fair trial.**  Specifically, in his written statement, Michael merely related that Mr. Smith informed him that in late 1991 his wife, Betty Fran Smith, had left him a note, did not return, and was missing.  According to Michael, Mr. Smith also said that the New Jersey police would be coming to speak with Michael.  Significantly, the written statement did not contain the highly prejudicial information regarding Betty Fran Smith's disappearance, which was presented at the pretrial hearing concerning the admissibility of the New Jersey Evidence under Evid.R. 404(B).  Moreover, one of the jurors related that the jurors did not consider this information in reaching their verdict.  Accordingly, based upon a careful review of the record, we cannot say that, under these circumstances, the trial court abused its discretion in finding that the specific reference to the New Jersey Evidence in State's Exhibit 48 did not constitute an irregularity of proceedings, which denied Mr. Smith a fair trial.

*          *          *          *          *

Based on the foregoing, we hold that the trial court did not abuse its discretion in denying Mr. Smith's Crim.R. 33(A)(1) motion.

*Smith*, 2002 Ohio App. LEXIS 4548 at *22-*27, *29 (footnote omitted) (emphasis added).

32

Ohio law requires, therefore, that a defendant be prejudiced by the improper admission of evidence before a court may grant a motion for a new trial.  The state appellate court, in affirming the judgment of the trial court, found that the inadvertent admission of a document referencing the New Jersey evidence did not prejudice Smith.  It reached this conclusion because the document admitted noted that Smith had a second wife who was missing but did not explain the suspicious details surrounding that disappearance.

To obtain habeas relief on his claimed violation of due process, Smith must show that admission of this evidence had so substantial and injurious an effect on the outcome of the trial that the trial court's failure to grant Smith's motion for a new trial violated his right to due process.  The state appellate court's finding of fact that the references to the New Jersey Evidence in State's Exhibit 48 were not prejudicial and did not deprive Smith of a fair trial is presumed correct, and Smith can only overcome that presumption by presenting clear and convincing evidence that the state court erred.  Smith provides no such evidence.[5]  Consequently, Smith may not obtain relief by claiming that admission of State Exhibit 48 violated his right to due process because it contained information which had been deemed inadmissible by the trial court.

Nor may Smith obtain relief from his claim that the admission of State Exhibit 48 violated his right to due process because it contained inadmissible lay opinions regarding his guilt.  In dismissing this assignment of error, the state appellate court made the following findings of fact and law:

---

[5] Smith notes that the admission of the improper evidence *could* have influenced the jury.  Traverse at 52.  This is not clear and convincing evidence.  The cases which Smith cites requiring a presumption of prejudice, cases involving juror prejudice, are distinguishable on both their facts and on their legal foundation.

33

In his fourth assignment of error, Mr. Smith argues that, in contravention of Evid.R. 701, the trial court admitted into evidence impermissible lay opinion testimony as to his guilt.  For the reasons that follow, we disagree.

Opinion testimony "is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."  Evid.R. 704.  Such testimony, however, must be "otherwise admissible[.]"  Evid.R. 704.  Therefore, Evid.R. 704 must be read in conjunction with Evid.R. 701 and 702.  *State v. Rakes* (Dec. 30, 1997), 3rd Dist. No. 11-97-9, 1997 Ohio App. LEXIS 5825; *State v. Poling* (May 17, 1991), 11th Dist. No. 88- T-4112, 1991 Ohio App. LEXIS 2294.  Evid.R. 701 governs opinion testimony by lay witnesses and limits lay opinion testimony to "opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

On appeal, Mr. Smith has pointed to a portion of State's Exhibit 48, in which Michael stated that he believed his brother, Mr. Smith, killed Janice and that he had no doubt that Mr. Smith was responsible for Janice's death and ultimate disposal of her body.  Mr. Smith argues that this lay opinion testimony was inadmissible under Evid.R. 701, and thus Evid.R. 704, because it was not rationally based on Michael's perceptions.

Mr. Smith failed to object to the admission of this evidence at trial and, therefore, has waived all but plain error.  *State v. McKee*, 91 Ohio St.3d 292, 294, 2001 Ohio 41, 744 N.E.2d 737 (writing that "errors that arise during a trial that are not brought to the attention of the court are ordinarily waived and may not be raised on appeal unless there is plain error, i.e., but for the error, the outcome of the trial clearly would have been otherwise"); see, also, Crim.R. 52(B).  **After a careful review of the record, we cannot say that, but for the alleged error in the admission of this evidence, "the outcome of the trial clearly would have been otherwise."**  *McKee*, 91 Ohio St.3d at 294.  Accordingly, Mr. Smith's fourth assignment of error is overruled.

*Smith*, 2002 Ohio App. LEXIS 4548 at *29-*31. (emphasis added).  The state appellate

court, in affirming the trial court's denial of a motion for a new trial, found it could not say

that the result of the trial clearly would have been otherwise absent the admission of the

allegedly improper evidence.  Thus, the appellate court found that the trial court did not

abuse its discretion in denying the motion for a new trial.

To obtain habeas relief, Smith must show that the state courts' decisions contradict

34

Supreme Court holdings indistinguishable on their facts from his case or show by clear and convincing evidence that the result of his trial clearly would have by otherwise absent the introduction of the alleged inadmissible evidence.  Smith does neither.  He cites no case whose facts are indistinguishable from his own and, again, relies entirely on supposition to support his assertion that the jury was prejudiced by the alleged inadmissible evidence.[6] Because Smith fails to meet his burden of proof, he may not obtain habeas relief on his claim that the trial court violated his right to due process by not granting his motion for a new trial.

For these reasons the magistrate judge recommends that the court dismiss Smith's second ground for relief.

3.      *Alleged due process violation for failure to grant motion for acquittal*

Smith claims that he was denied his right to due process when the trial court failed to grant his motion for acquittal when the state failed to prove every element of the crime charged.  The decision whether to grant a motion for acquittal pursuant to Ohio Crim. R. 29 is a matter of state law and is cognizable in habeas only if the denial of such a motion is a violation of due process.

Smith alleges that his motion for acquittal should have been granted because there was insufficient evidence to prove every element of the crime.  The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond

---

[6]  Smith asserts, "[T]here was a constitutionally significant likelyhood [sic] that, absent questioning about the potential bias there was a reasonable potential the jury was tainted" and "[t]he substantial risk that the jury looked to Micheal's incriminating confessional statements added substantial, perhaps even critical weight to the state's case and proved to be 'powerfully incriminating.'" Traverse at 54, 55.  Again, this is not clear and convincing evidence of error.

a reasonable doubt as to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64 (1970). The test of whether a conviction is supported by sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A habeas court resolves all conflicting inferences in favor of the prosecution, and does not weigh the credibility of witnesses. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983). The evidence need not be sufficient to convince the habeas court of the petitioner's guilt beyond a reasonable doubt. *Fuller v. Anderson*, 662 F.2d 420, 435 (6th Cir. 1981), *cert. denied*, 455 U.S. 1028 (1982).

Smith alleges there was insufficient evidence of the intent to cause death, one of the required elements for murder. Smith rests his argument on the assertion that Ohio law prohibits a conviction for murder where the state has not presented evidence that the accused specifically intended to kill the victim. That is an incorrect statement of the law. In Ohio, intent may be inferred from the circumstances surrounding the crime, even when the alleged crime is murder. *State v. Herring*, 94 Ohio St. 3d 246, 266, 762 N.E.2d 940, 961 (2002).

The state appellate court found the following on Smith's direct appeal: "Construing the evidence most strongly in favor of the prosecution, as we must do in reviewing the sufficiency of the evidence, we find that reasonable minds could find beyond a reasonable doubt all of the essential elements of murder . . . ." *Smith*, 2002 Ohio App. LEXIS 4548 at *21. To obtain relief on his claim, Smith must show by clear and convincing evidence that

the state appellate court erred in making this finding of fact.  Smith does not carry this burden.  Rather, he relies on the lack of evidence going directly to Smith's intent to kill his wife and on the possibility that she might have been killed because of her work as an informer.  As has already been shown, a jury may find intent from the circumstances surrounding a murder even in the absence or evidence going directly to intent.  Further, the mere possibility that the evidence offered at trial might support an alternative verdict is insufficient to obtain habeas relief.

Smith does not show by clear and convincing evidence that the state appellate court erred in finding that reasonable minds could find beyond a reasonable doubt all of the essential elements of murder.  Consequently, the magistrate judge recommends that the court overrule his third ground for relief.

IV.

For the foregoing reasons the magistrate judge recommends that the court deny Smith's petition for a federal writ of habeas corpus.

Date:  August  25, 2005                    /s/Patricia A. Hemann
                                           Patricia A. Hemann
                                           United States Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985) reh'g denied, 474 U.S. 1111 (1986).